UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

INTERNATIONAL STRATEGIES GROUP, LTD.

Plaintiff

v.                                                    CIVIL ACTION NO. 04 10863 RWZ

STEPHEN C. HEFFERNAN              **PLAINTIFF DEMANDS A TRIAL BY JURY**

Defendant

MAGISTRATE JUDGE Alexander

RECEIPT # 55617
AMOUNT $150
SUMMONS ISSUED Yes
LOCAL RULE 4.1 ✓
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. F.O.M
DATE 4-30-04

**COMPLAINT**

Preliminary Statement

1. This action arises out of the misappropriation of $4 million obtained from plaintiff International Strategies Group, Ltd. as a result of breaches of fiduciary duty, misrepresentations and other tortious actions and violations of law by defendant and others. Defendant himself engaged in tortious actions and violations of law, and also acted in concert with others, and aided and abetted others, to commit tortious actions and violations of law

Jurisdiction and Venue

2. This Court has jurisdiction over this action pursuant to 18 U.S.C. § 1332 because it is an action between citizens of different nations and the amount in controversy exceeds the value of $75,000, exclusive of interests and costs.

3. Venue in this district is proper pursuant to 28 U.S.C. § 1391 (a) (2).

## The Parties

4. Plaintiff International Strategies Group, Ltd. ("ISG") is a corporation incorporated and existing under the laws of Tortola, British Virgin Islands with a principal place of business in Hong Kong.

5. Defendant Stephen C. Heffernan ("Heffernan") is an individual residing at 8 Country Club Drive, Walpole, Norfolk County, Massachusetts.

6. Heffernan has a degree in business administration and has worked in the field of finance. He has, from time to time, held himself out as having experience and expertise in financial and investment matters.

## Facts

7. From in or about 1997 through at least 2001, Heffernan was affiliated with and employed by entities controlled by an individual known as James F. Pomeroy, II ("Pomeroy"). Those entities included Corporation of the BankHouse, Inc. ("COB") and SB Global, Inc. ("SBG").

8. COB and SBG were incorporated under the laws of the state of Delaware, and had principal places of business in Boston, Massachusetts.

9. COB and SBG were entities formed by or on behalf of Pomeroy and were created and used for the purpose of taking investment funds from third parties. COB also operated under the name Societe BankHouse.

10. Heffernan held the title of Treasurer of both COB and SBG.

11. Heffernan acted as chief financial officer of COB, SBG and other Pomeroy-controlled entities. As such, he was a signatory to most or all of the entities' bank

accounts, received account statements from the banks, balanced the accounts, was responsible for the entities' tax filings and otherwise was privy to the financial dealings of the entities.

12. Heffernan was one of the core group of senior executives in the Pomeroy-controlled entities, and acted as a corporate director and manager of those entities. Heffernan participated in meetings with other senior managers, including Pomeroy, regarding the operations of COB, SBG and the other Pomeroy-controlled entities.

13. At the time all of the actions described below were taken, Heffernan was an active participant and/or a senior manager and executive of Pomeroy-controlled entities.

14. In or about April 1998 COB solicited an investment from ISG.

15. Based on representations made by COB and by Pomeroy, including that ISG's funds would not be depleted and that it would receive profits, ISG gave COB $4,000,000 for purposes of investment.

16. As a result of COB's acceptance of ISG's investment funds, and by virtue of their superior knowledge, skill and expertise, COB, Pomeroy and Heffernan owed a fiduciary duty to ISG.

17. ISG relied on COB, Pomeroy and Heffernan to act as fiduciaries on ISG's behalf.

18. In or about the same time, COB solicited investments from other entities such as Danstrupland Holding A/S ("Danstrupland"), a Danish corporation which later changed its name to St. Frederikslund Holding A/S, and P.R.C.S., a British entity. Both Danstrupland and P.R.C.S., along with ISG, became members of a COB investment syndicate.

19. The investments made by ISG, Danstrupland and P.R.C.S. totaled $24,000,000 and were initially deposited in accounts at Abn Amro Bank in Brussels, Belgium.

20. Shortly after its funds were deposited, ISG's $4,000,000 investment was depleted by a series of transfers made at COB's direction, including transfers to a COB account in the United States, to a client funds account in the name of a law firm representing COB, and to other parties.

21. The transfers described in the preceding paragraph were made without ISG's knowledge or consent.

22. Heffernan either knew or was in a position to know of the transfers described above, and that they were made without ISG's knowledge or consent.

23. Instead of telling ISG the truth, COB represented to ISG that its investment holdings had not been depleted, and that they had increased. Heffernan either knew or was in a position to know of COB's misrepresentation, and he substantially assisted or encouraged it.

24. In or about October 1998, based upon COB's and Pomeroy's representation, ISG expected to be paid both its principal and profit.

25. Also in or about October 1998, COB proposed to ISG that it accept a substitute promissory note for $9,000,000 in lieu of immediate payment of either principal or profit.

26. Heffernan, along with Pomeroy, participated in and aided in making the proposal to ISG that it accept a substitute promissory note.

27. At the time the proposal regarding the substitute promissory note was made, both Heffernan and Pomeroy knew that ISG's $4,000,000 investment had been depleted, and both failed to tell ISG of that fact.

28. Based on the actions of COB, Pomeroy and Heffernan, including representations they made and their failure to inform ISG of certain facts, ISG agreed to accept the substitute promissory note, and agreed to allow what it believed to be an augmented investment amount to be transferred to another entity, Swan Trust, for further investment.

29. Swan Trust was an entity with a principal place of business in Isle of Man, United Kingdom, with an individual known as Henry Pearlberg as trustee.

30. In or about October 1998, Pomeroy and COB transferred $19,000,000 to Swan Trust, including ISG's $4,000,000 share in the investment syndicate. The balance of the funds transferred was attributed to the other investors, Danstrupland and P.R.C.S.

31. Heffernan participated in and aided in Pomeroy's and COB's transfer of funds to Swan Trust. Heffernan either knew or was in a position to know that the transfer was in breach of fiduciary and other duties owed to ISG, and he substantially assisted or encouraged it.

32. Thereafter, Heffernan and Pomeroy learned that Swan Trust had transferred ISG's and other investors' funds to third parties, and that the funds had been dispersed to one or more bank accounts. Neither Heffernan nor Pomeroy told ISG the true state of affairs, and instead allowed another senior manager of COB tell ISG that profits had been earned, and funds would be distributed shortly.

33. ISG asked COB for assurance that its funds had not been depleted, and for a commitment as to when ISG would be paid. Heffernan promised ISG that he would respond expeditiously to ISG's inquiry, but he failed to do so. Heffernan's failure to provide the information resulted in ISG remaining unaware of the true state of affairs.

34. Unbeknownst to ISG, COB was insolvent, or nearly insolvent, beginning in 1998. Heffernan either knew or was in a position to know that COB was insolvent or nearly insolvent, and unable to pay ISG and the investors the amounts owed to them.

35. Starting in or about 1999, COB and Swan Trust discussed arranging for the investors' funds to be returned, and for Swan Trust's interest in certain bank accounts to be assigned to COB for the benefit of ISG and the other investors. COB and Pomeroy represented to ISG and the other investors that their funds were about to be returned.

36. In or about June 1999, Swan Trust did execute an assignment transferring its rights to certain bank accounts to COB and/or Pomeroy so that ISG and the other investors could be paid, at least in part.

37. Pursuant to the assignment from Swan Trust, Pomeroy received at least $1,215,000. ISG was not paid any part of that amount and, upon information and belief, neither of the other investors was paid.

38. Heffernan either knew or was in a position to know that Pomeroy's receipt of $1,215,000 was in violation of fiduciary and other duties owed to ISG, and he substantially assisted or encouraged it.

39. Upon information and belief, in or about February 2000, Heffernan received a promissory note from COB in which he was promised payment of $500,000 once COB received payment from Swan Trust in connection with the transactions involving ISG's and the other investors' funds.

40. In or about June 2000, COB solicited a power of attorney from each of the investors pursuant to which the investor would appoint a lawyer at a law firm that was representing COB to act on behalf of the investors in connection with recovering the funds COB had taken from the investors.

41. In or about June 2000, ISG and Danstrupland gave powers of attorney to COB's lawyer.

42. On or about August 3, 2000 Pomeroy incorporated SBG as a Delaware corporation.

43. SBG was funded by St. Frederikslund (formerly known as Danstrupland) by way of a cash transfer of $1,800,000. In addition, St. Frederikslund placed $100 million in an account which, upon information and belief, was earmarked for the purpose of funding SBG.

44. In addition, St. Frederikslund (or Danstrupland, as it was formerly known) provided, upon information and belief, an additional $8,884,876 to COB.

45. Of the cash transferred to COB and SBG, significant sums in the approximate amount of $9,000,000 were transferred to COB, to lawyers who were representing COB, including the lawyer to whom ISG had given its power of attorney, and to another entity related to St. Frederikslund or its principals.

46. Despite fiduciary duties owed to ISG, neither COB, Pomeroy nor Heffernan told ISG that SBG had been formed, or that St. Frederikslund had financed SBG, or that SBG and COB had made intra-company transfers to COB, or to the law firms representing COB, or to another entity related to St. Frederikslund or its principals.

47. None of the intra-company transfers to COB and its lawyers were used to pay ISG or the other investors.

48. Heffernan knew of the incorporation of SBG, its funding and the various transfers, as described above. Heffernan either knew or was in a position to know that such actions were in breach of fiduciary and other duties owed to ISG, and he substantially assisted or encouraged said actions.

49. From mid-2000 though 2001, COB attempted to dissuade ISG from undertaking any of its own efforts to recover its funds. COB said, in essence, that it was doing everything feasible to recover the funds, and that if ISG took any action, that would interfere with COB's ability to recover on behalf of the investors. ISG acceded to that instruction.

50. ISG has not recovered its principal or the profits promised by COB.

51. In all of the actions described above, Heffernan acted in concert with Pomeroy, COB, and SBG to commit tortious acts in connection with taking ISG's investment funds, making representations about how the funds would be handled, transferring the funds to third parties and otherwise handling the funds in contravention of the representations made, covering up the facts, and influencing

ISG not to pursue its own recovery of the funds, all of which resulted in damage to ISG.

52. In all of the actions described above, Heffernan knew that Pomeroy's, COB's and SBG's conduct constituted a breach of their fiduciary and other duties owed to ISG, including the duty to make true and complete statements of fact. Heffernan gave substantial assistance or encouragement to Pomeroy, COB and SBG so to conduct themselves.

53. In all of the actions described above, Heffernan gave substantial assistance or encouragement to Pomeroy, COB and SBG in accomplishing one or more tortious results, namely committing fraud, making intentional and negligent misrepresentations, committing securities law violations and acting in violation of M.G.L. c. 93A. Heffernan's own conduct constituted a breach of the fiduciary and other duties he owed to ISG, including the duty to make true and complete statements of fact.

54. In all of the actions described above, Heffernan acted outside the scope of his employment and engaged in conduct to further his own purposes and not those of the entities by which he was employed.

55. Heffernan's participation in the actions described above was discovered by ISG as a result of documents produced by defendants in a civil action brought in the United States District Court for the District of Massachusetts, <u>International Strategies Group, Ltd. v. Corporation of the BankHouse, Inc., et al</u>, Civil Action No. 02-10532-RWZ, which documents were produced in the years 2002 and 2003.

## COUNT I

### (Breach of Fiduciary Duty)

56. ISG incorporates by reference all allegations contained in Paragraphs 1 through 55 as if repeated herein.

57. Heffernan breached his fiduciary duty to ISG, either on his own or in concert with others, by failing to tell ISG that its account had been depleted and its funds transferred away; by inducing ISG to accept a substitute promissory note; by failing to tell ISG that its funds had been transferred to Swan Trust and that Swan Trust had in turn transferred them to others; by representing to ISG that its funds would be recovered from Swan Trust and repaid to ISG when, in fact, the recovery by way of assignment was used for personal gain and not for the benefit of ISG or other investors; by using the power of attorney to stall ISG's own recovery efforts; by funneling assets to another corporate entity and then using them for the benefit of COB but not for ISG or the other investors; and otherwise breaching his fiduciary duty to ISG.

## COUNT II

### (Conspiracy to Breach Fiduciary Duty)

58. ISG incorporates by reference all allegations contained in Paragraphs 1 through 57 as if repeated herein.

59. Heffernan conspired with Pomeroy, COB, SBG and others to breach fiduciary and other duties owed to ISG.

## COUNT III

### (Aiding and Abetting Breach of Fiduciary Duties)

60. ISG incorporates by reference all allegations contained in Paragraphs 1 through 57 as if repeated herein.

61. Heffernan aided and abetted Pomeroy, COB, SBG and others to breach fiduciary duties owed to ISG.

## COUNT IV

### (Negligent Misrepresentation)

62. ISG incorporates by reference all allegations contained in Paragraphs 1 through 55 as if repeated herein.

63. Heffernan made negligent misrepresentations to ISG with the intention of inducing ISG to rely upon them by failing to tell ISG that its account had been depleted and its funds transferred away; by inducing ISG to accept a substitute promissory note without revealing the true state of affairs and/or by making false representations; by failing to tell ISG that its funds had been transferred to Swan Trust and that Swan Trust had in turn transferred them to others; by representing to ISG that its funds would be recovered from Swan Trust and repaid to ISG when, in fact, the recovery by way of assignment was used for personal gain and not for the benefit of ISG or other investors; by using the power of attorney as a way to stall ISG's own recovery efforts; by funneling assets to another corporate entity and then using them for the benefit of COB but not for ISG or the other

investors; and otherwise making misrepresentations to ISG, including that he would respond expeditiously to ISG's inquiries.

## COUNT V

### (Conspiracy to Make Negligent Misrepresentations)

64. ISG incorporates by reference all allegations contained in Paragraphs 1 through 63 as if repeated herein.

65. Heffernan conspired with Pomeroy, COB, SBG and others to make negligent misrepresentations to ISG.

## COUNT VI

### (Aiding and Abetting Negligent Misrepresentations)

66. ISG incorporates by reference all allegations contained in Paragraphs 1 through 63 as if repeated herein.

67. Heffernan aided and abetted Pomeroy, COB, SBG and others to make negligent misrepresentations.

## COUNT VII

### (Intentional Misrepresentation)

68. ISG incorporates by reference all allegations contained in Paragraphs 1 through 55 as if repeated herein.

69. Heffernan made intentional misrepresentations to ISG with the intention of inducing ISG to rely upon them by failing to tell ISG that its account had been depleted and its funds transferred away; by inducing ISG to accept a substitute promissory note without revealing the true state of affairs; by failing to tell ISG that its funds had been transferred to Swan Trust and that Swan Trust had in turn

transferred them to others; by representing to ISG that its funds would be recovered from Swan Trust and repaid to ISG when, in fact, the recovery by way of assignment was used for personal gain and not for the benefit of ISG or other investors; by using the power of attorney as a way to stall ISG's own recovery efforts; by funneling assets to another corporate entity and then using them for the benefit of COB but not for ISG or the other investors; and otherwise making misrepresentations to ISG, including that he would respond expeditiously to ISG's inquiries.

## COUNT VIII

### (Conspiracy to Make Intentional Misrepresentations)

70. ISG incorporates by reference all allegations contained in Paragraphs 1 through 69 as if repeated herein.

71. Heffernan conspired with Pomeroy, COB, SBG and others to make intentional misrepresentations to ISG.

## COUNT IX

### (Aiding and abetting intentional misrepresentations)

72. ISG incorporates by reference all allegations contained in Paragraphs 1 through 69 as if repeated herein.

73. Heffernan aided and abetted Pomeroy, COB, SBG and others to make intentional misrepresentations.

## COUNT X

### (Fraud)

74. ISG incorporates by reference all allegations contained in Paragraphs 1 through 55 as if repeated herein.

75. Heffernan engaged in fraud by making intentional misrepresentations to ISG with the intention of inducing ISG to rely upon them by failing to tell ISG that its account had been depleted and its funds transferred away; by inducing ISG to accept a substitute promissory note without revealing the true state of affairs; by failing to tell ISG that its funds had been transferred to Swan Trust and that Swan Trust had in turn transferred them to others; by representing to ISG that its funds would be recovered from Swan Trust and repaid to ISG when, in fact, the recovery by way of assignment was used for personal gain and not for the benefit of ISG or other investors; by using the power of attorney as a way to stall ISG's own recovery efforts; by funneling assets to another corporate entity and then using them for the benefit of COB but not for ISG or the other investors; and otherwise making misrepresentations to ISG, including that he would respond expeditiously to ISG's inquiries.

## COUNT XI

### (Conspiracy to Commit Fraud)

76. ISG incorporates by reference all allegations contained in Paragraphs 1 through 75 as if repeated herein.

77. Heffernan conspired with Pomeroy, COB, SBG and others to make intentional misrepresentations to ISG.

## COUNT XII

### (Aiding and Abetting Fraud)

78. ISG incorporates by reference all allegations contained in Paragraphs 1 through 75 as if repeated herein.

79. Heffernan aided and abetted Pomeroy, COB, SBG and others to make intentional misrepresentations.

Wherefore, plaintiff ISG demands:

a. Judgment in its favor;

b. Compensatory damages;

c. Interest and costs;

d. Attorneys fees;

e. Such other relief as the Court may deem just and proper.

PLAINTIFF
INTERNATIONAL STRATEGIES
GROUP, LTD.

by its attorneys

*Kathleen C Stone*
Kathleen C. Stone
BBO# 481920
Looney, Cohen, Reagan & Aisenberg LLP
109 State Street
Boston, MA 02109
617-371-1050

April 30, 2004