UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INTERNATIONAL STRATEGIES GROUP, LTD., <br><br> *Plaintiff,* <br><br> v. <br><br> STEPHEN C. HEFFERNAN, <br><br> *Defendant.* | Civil Action <br> No. 04CV10863RWZ |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS
MOTION TO DISMISS THE COMPLAINT**

**INTRODUCTION**

Defendant Stephen C. Heffernan ("Heffernan") has moved, pursuant to Fed. R. Civ. P. 12 (b)(6) and Local Rule 7.1, to dismiss all counts of the Complaint filed by the plaintiff, International Strategies Group, Ltd. ("ISG"). By 1999, and no later than February of 2001, ISG had actual knowledge of its claims, such as they are, against Heffernan. As this action was not filed until April 30, 2004, it is time barred and should be dismissed in its entirety.

Alternatively, Heffernan seeks dismissal of ISG's breach of fiduciary duty and fraud claims, none of which state a claim upon which relief can be granted.

**THE ALLEGATIONS**

**ISG's Fraud Claims**

ISG is a corporation based in Hong Kong and incorporated under the laws of the British Virgin Islands. *Complaint*, ¶ 4.[1] In 1998, ISG "gave" the Corporation of the BankHouse, Inc.,

---

[1] As he must, Heffernan accepts, solely for purposes of this motion, the facts alleged in ISG's Complaint as true.

("COB") $4,000,000 "for purposes of investment." *Id.*, ¶ 14-15. Its alleges that it gave its $4,000,000 to COB based on representations its "funds would not be depleted and that it would receive profits." *Id.*, ¶ 15. Notably, ISG does not allege that Heffernan made such representations. *Id.*

The essence of this case is ISG's allegation and complaint that it "has not recovered its principal [$4,000,000] or the profits promised by COB." *Id.*, ¶ 50. That is the basis upon which all of its claims against Heffernan are premised.

In what can fairly be described as an orgy of over pleading, ISG asserts nine different misrepresentation claims, Counts IV through XII. In order to do this, ISG starts by asserting claims of negligent misrepresentation (Count IV) and intentional misrepresentation (Count VII). Perceiving a difference between "intentional misrepresentation" and "fraud", ISG adds a third misrepresentation claim called simply "fraud" (Count X).[2] ISG then leverages those three claims into nine by adding "conspiracy to make misrepresentations" claims (Counts V, VII and XI) and "aiding and abetting misrepresentations" claims (Counts VI, IX and XII). This leads to the interesting legal question: Can one conspire to commit a negligent act? *See Complaint*, ¶ 65. One suspects not, but the important point is that a substantial part of ISG's case against Heffernan is premised on a misrepresentation theory. Significantly, however, ISG does not allege a single misrepresentation made by Heffernan.[3]

### ISG's Fiduciary Duty Claims

In addition to its nine misrepresentation claims, ISG asserts claims for breach of fiduciary duty, conspiracy to breach fiduciary duty and aiding and abetting breach of fiduciary duty

---

[2] Substantively, there is no difference between ISG's intentional misrepresentation claim (Count VII) and its fraud claim (Count X). *Compare Complaint*, ¶ 69 and ¶ 75.

[3] As explained more fully in Argument Section II, *infra*, at 11-12, paragraph 33 of the Complaint does not contain an allegation of misrepresentation by Heffernan.

2

(Counts I, II and III, respectively). ISG does not allege that Heffernan was its fiduciary in any formal sense, *e.g.*, as trustee to beneficiary. It alleges that:

> As a result of COB's acceptance of ISG's investment funds, and by virtue of their superior knowledge, skill and expertise, COB, [James F.] Pomeroy and Heffernan owed a fiduciary duty to ISG.

*Id.*, ¶ 16. Precious little is offered to support that legal conclusion. While ISG alleges that it "relied on COB, Pomeroy and Heffernan to act as fiduciaries on ISG's behalf," *id.* ¶ 17, it does not allege that Heffernan knew that ISG was relying on him to act as its fiduciary.

### ISG Had Actual Knowledge Of Its Injury More Than Three Years Ago

Although somewhat cryptic, the Complaint plainly indicates that by at least June of 2000, COB had lost ISG's $4,000,000, which was supposed to never be depleted. *Id.*, ¶¶ 40 and 49. Moreover, it is clear that by June of 2000, ISG knew that its money was gone and ISG was discussing with COB representatives strategies for "recovering the funds." *Id.*, ¶ 40. In paragraph 40 of the Complaint ISG alleges that it gave a Power Of Attorney to COB's lawyer for the purpose of "recovering" its $4,000,000. Under the terms of the Power Of Attorney,[4] COB's lawyer, A. John Pappalardo, ("Pappalardo") was authorized to act on behalf of ISG in seeking to recover the $4,000,000 from third parties. *Fitzpatrick Aff.*, Ex. 1D. Moreover, under the Power Of Attorney, ISG agreed to pay a 7% fee to a "consulting collection agency" called T&TT if any of its funds were found. *Id.* At that point, ISG had sustained its damages and knew it. Indeed,

---

[4] A copy of the Power Of Attorney is attached as Exhibit 1D to the Affidavit Of Thomas S. Fitzpatrick ("Fitzpatrick Aff.") submitted herewith. While not an exhibit to the Complaint, the Court may consider the Power Of Attorney without converting the motion to dismiss to a motion for summary judgment. *Beddall v. State Street Bank And Trust Company*, 137 F.3d 12, 17 (1st Cir. 1998); *Citicorp North America, Inc. v. Ogden Martin Systems of Haverhill*, 8 F. Supp. 2d 72, 74 (D. Mass. 1998). The "court's inquiry into the viability of ... [plaintiffs'] allegations should not be hamstrung simply because" they did not "append to the complaint the very document upon which" their "allegations rest." *Beddall v. State Street Bank And Trust Company*, 137 F 3d at 17.

3

ISG makes no allegations that its $4,000,000, or any part of it, ever came back within COB's custody or control after June of 2000.

In fact, it is clear that well before June of 2000, ISG had actual knowledge that its $4,000,000 was lost and that it had been damaged. Attached as Exhibit B and C to the Affidavit Of Christopher M. Barber are two letters sent during 1999 to ISG by Pappalardo.[5] Having received the letters in 1999, ISG had actual knowledge that its funds had been misappropriated and recovery efforts were being pursued. Indeed, ISG knew that a criminal investigation had been commenced over the theft of the money. *Barber Aff.*, Ex. B.

Certainly, by February 22, 2001, ISG knew of its injury. On that date, *more than three years and two months before this suit was commenced*, ISG received a fax letter from Pappalardo which began as follows:

> I write to inform you of the current status of the efforts to identify and recover monies which were invested by ISG with Swan Trust and later misappropriated and diverted by Mr. Henry Pearlberg to John Patrick.

*Barber Aff.*, Ex. E. Plainly, by February 22, 2001, ISG had actual knowledge that it had been harmed and that its funds had been misappropriated and diverted.

---

[5] The Barber Affidavit is attached as Exhibit 1 to the Fitzpatrick Affidavit. The Court can, and should, consider the Barber Affidavit and the documents attached thereto all of which he authenticates. "Ordinarily, a court may not consider any documents that are outside the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Alternative Energy, Inc. v. St. Paul Fire And Marine Insurance Co.*, 267 F.3d 30, 33 (1st Cir. 2001), *citing Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). There is an exception, however, "for documents the authenticity of which are not disputed by the parties; [or] for official public records...." *Alternative Energy, Inc. v. St. Paul Fire And Marine Insurance Co.*, 267 F.3d at 33, *quoting Watterson v. Page*, 987 F.2d at 3. The documents at issue here fit within the exception on both counts. The Barber Affidavit was filed with the Court in *International Strategies Group, Inc. v. Corporation Of The BankHouse, Inc. et al.*, U.S. Dist. Ct. (Mass.) Civil Action No. 02-10532-RWZ. *Fitzpatrick Aff.*, ¶ 2. Plainly, ISG does not dispute the authenticity of the Affidavit filed by its counsel or the exhibits thereto each of which Barber authenticated as "a principal and a director of International Strategies Group, Inc...." *Barber Aff.*, ¶¶ 2, 11 and 13. Moreover, the affidavit is a public record filed with this Court.

**ISG Alleges No Improper Benefit To Heffernan**

ISG does not allege that Heffernan ever misappropriated its $4,000,000 or benefited from any of the conduct alleged in the Complaint. IGS does allege that in February of 2000, "Heffernan received a promissory note from COB in which he was promised payment of $500,000 once COB received payment from Swan Trust in connection with the transactions involving ISG's and the other investors' funds." *Id.*, ¶ 39. It does not allege, however, that Heffernan ever received any payments under the promissory note. Given ISG's allegation that "COB was insolvent, or nearly insolvent, beginning in 1998," *id.*, ¶ 34, there is no basis to believe that the promissory note was anything other than worthless. Furthermore, ISG does not allege that Heffernan's receipt of the note was wrongful or that it caused ISG any injury.

**ISG's Irrelevant Allegations Concerning SB Global, Inc.**

Paragraphs 42 through 48 of the Complaint concern the formation and funding of SB Global, Inc. ("SBG"). ISG dose not allege that it invested any funds with SBG or that it had any contract or business dealings with it. While ISG has the ability to perceive fiduciary duties where none exist, it does not allege that SBG had any fiduciary duty to ISG.

SBG was formed in August of 2000, *id.*, ¶ 42, after ISG's $4,000,000 was gone and needed to be "recover[ed]," *see id.*, ¶ 41. ISG does not allege that SBG ever had custody or control of its $4,000,000. Nor does it allege that SBG had any obligation to pay ISG any sums. Thus, while ISG's allegations about the funding SBG are interesting, they do not relate to its claims against Heffernan in any legally significant way.

## ARGUMENT

I. **ISG'S TORT CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.**

   A. **The Statute Of Limitations On ISG's Claims Began To Run More Than Three Years Ago.**

As will be demonstrated, the applicable statute of limitations had expired well before April 30, 2004 when ISG commenced this action. "Generally, a federal court in a diversity case applies the statute of limitations that would be applied by the forum state." *Deisenroth v. Numonics Corp.*, 997 F. Supp. 153, 156 (D. Mass. 1998); *quoting Stanley v. CF-VH Assoc., Inc.*, 956 F. Supp. 55, 57 (D. Mass. 1997); *accord Pitts v. Aerolite SPE Corp.*, 673 F. Supp. 1123, 1127 (D. Mass. 1987), *aff'd*, 841 F.2d 23 (1st Cir. 1988). Under Massachusetts law, tort claims for misrepresentation, fraud or breach of fiduciary duty must be brought within three years after the cause of action accrues. M.G.L.c. 260, § 2A; *Micromuse, Inc. v. Micromuse, PLC*, 304 F. Supp. 2d 202, 214 (D. Mass. 2004); *Cofer v. Sunoco, Inc.*, 2002 WL 745839 * 2 (D. Mass. 2002).

A "cause of action accrues at the time of plaintiff's injury." *Cofer v. Sunoco, Inc.*, 2002 WL 745839 * 2, *citing Joseph A. Fortin Const., Inc. v. Mass. Housing Financial Agency*, 392 Mass. 440, 442 (1984). "The general rule is that the statute begins to run when the injured party has notice of the claim." *Best v. AGFA Compugraphic*, 1992 WL 390713 * 4 (D. Mass. 1992), *citing White v. Peabody Constr. Co.*, 386 Mass. 121, 129 (1982). "[N]otice is simply knowledge that an injury has occurred." *Collin v. Nuzzo*, 244 F.3d 246, 253 (1st Cir. 2001), *quoting Flynn v. Associated Press*, 401 Mass. 776, 780 (1988); *accord Best v. AGFA Compugraphic*, 1992 WL 390713 * 4; *White v. Peabody Constr. Co.*, 386 Mass. at 130.

ISG alleges that it "gave COB $4,000,000" based on representations "that ISG's funds would not be depleted and that it would receive profits." *Complaint*, ¶ 14. It further alleges that

6

by October of 1998, "ISG expected to be paid both its principal and profit." *Id.*, ¶ 24. It claims, however that it "has not recovered its principal or the profits by COB." *Id.*, 50. It further alleges that the injury it sustained was the results of the depletion of its investment through transfers made by COB contrary to the parties' agreement and accomplished without ISG's knowledge and consent. *Id.*, ¶¶ 20-26, *see also id.*, ¶ 15; *Barber Aff.*, ¶ 7 and Ex. A § 1.2.

Pappalardo's two letters to ISG in 1999 not only advised ISG that its funds had been depleted but also that criminal investigations were underway to determine what had become of ISG's money. *Barber Aff.*, Exs. B and C. Certainly, by 1999, ISG knew that COB had violated its non-depletion commitment to ISG and, as a result, ISG's money was long gone.

By the summer of 2000, ISG had granted a Power Of Attorney to Pappalardo to assist in "recovering the funds." *Complaint*, ¶ 40; *Barber Aff.*, Ex. D. Indeed, the Power Of Attorney authorized the payment of a 7% fee, to be deducted from ISG funds, if a "consulting collection agency" was successful in recovering them. *Barber Aff.*, Ex. D. Plainly, by that time, ISG knew that its $4,000,000 had been depleted, that COB had not kept its commitment of non-depletion and that ISG's expectations of receiving its principal and profit by October of 1998 had not been met. If the statute of limitations had not begun to run in 1999, it did in the summer of 2000 when ISG granted Pappalardo the Power Of Attorney.

Even if ISG had not received Pappalardo's two letters in 1999 and not given him the Power Of Attorney in 2000, there is no dispute that by February of 2001, ISG had actual knowledge that its $4,000,000 had not merely been depleted in contradiction of COB's non-depletion commitment, but had been "misappropriated and diverted." *Barber Aff.*, Ex. E. Pappalardo's fax letter of February 22, 2001 made it abundantly clear to ISG that its money had

been stolen, that it had "passed through various institutions," and was, at that time, the subject of an international recovery effort and a criminal investigation. *Id.*

Barber acknowledges that ISG received Pappalardo's February 22, 2001 fax letter. *Barber Aff.*, ¶ 15. As such, ISG cannot dispute that more than three years before it commenced this suit, it had "knowledge that an injury had occurred." *Collin v. Nuzzo*, 244 F.3d at 253, quoting *Flynn v. Associated Press*, 401 Mass. at 780; accord *Best v. AGFA Compugraphic*, 1992 WL 390713 * 4; *White v. Peabody Constr. Co.*, 386 Mass. at 130. That constituted "notice" which caused the statute of limitations to begin to run. *Id.* The inexorable legal conclusion is that ISG's claims against Heffernan are barred by the three year statute of limitations. M.G.L.c. 260, § 2A

### B.  The Discovery Rule Will Not Save ISG's Time Barred Claims.

ISG will undoubtedly present arguments that its claims are not time barred. Any such arguments are without merit. It may argue that the "discovery rule" applies and saves its claims.

> Under Massachusetts law, the discovery rule suspends the running of the statute of limitations where a cause of action is based on an "inherently unknowable" wrong; the statute only starts to run when the "harm becomes known, or in the exercise of reasonable diligence should have become known, to the injured party."

*Collins v. Nuzzo*, 244 F.3d at 253, quoting *Catrone v. Thoroughbred Racing Ass'ns of North America, Inc.*, 929 F.2d 881, 885 (1st Cir. 1991); accord *Saenger Organization, Inc. v. Nationwide Insurance Licensing Associates, Inc.*, 119 F.3d 55, 65 (1st Cir. 1997); *Cofer v. Sunoco, Inc.*, 2002 WL 745839 * 2; *Estate of Sarocco v. General Electric Company*, 939 F. Supp. 91, 95-96 (D. Mass. 1996).

ISG's harm was by no means "inherently unknowable," but even if it was, the discovery rule is of no assistance to it. As noted above, under the rule, the statute began to run when "the harm" became "known, or in the exercise of reasonable diligence should have become known,

8

to" ISG. *Collins v. Nuzzo*, 244 F.3d at 253, *quoting Catrone v. Thoroughbred Racing Ass'ns of North America, Inc.*, 929 F.2d at 885. That occurred in 1999 or, at the latest, February of 2001. "Massachusetts does not require discovery of each of the elements of the cause of action -- duty, breach, causation, and damages before the limitations clock...starts ticking." *Sheila S. v. Commonwealth*, 57 Mass. App. Ct. 423, 428 (2003); *quoting Krasnow v. Allen*, 29 Mass App. Ct. 562, 569 (1990), *rev. denied*, 409 Mass. 1102 (1991); *quoting Malaparris v. Shirazi*, 21 Mass. App. Ct., 378, 382 (1986). The statue will begin to run even if the plaintiff does not know the full extent of its injury or that there has been a breach of a duty. *Arthur D. Little Int'l, Inc. v. Dooyang Corp.* 928 F. Supp. 1189, 1203-04 (D. Mass. 1996), *citing Fidler v. Eastman Kodak Co.*, 714 F.2d 192, 199 (1st Cir. 1983); *Swasey v. Barron*, 46 Mass. App. Ct. 127, 132 (1999) ("uncertainty about the total extent of the damages does not delay the accrual of a cause of action."). By 1999, and no later than February of 2001, ISG knew it was harmed even if it was uncertain as to the extent of its injury.

In paragraph 55 of its Complaint, ISG alleges:

Heffernan's participation in the actions described above was discovered by ISG as a result of documents produced by defendants in a civil action brought in the United States District Court for the District of Massachusetts, *International Strategies Group Ltd. v. Corporation of the BankHouse, Inc., et al*, Civil Action No. 02-10532-RWZ, which documents were produced in the years 2002 and 2003.

ISG apparently plans to argue that while it knew more than three years ago that it was a financial victim, it did not know Heffernan was involved. As both legal and factual matters, such an argument would be devoid of merit. The fact that a plaintiff is unaware that a particular defendant may be culpable does not toll the running of the statue once the plaintiff knows it was injured. *Krasnow v. Allen*, 29 Mass. App. Ct. at 569-70. Furthermore, the thrust of ISG's claim is that as treasurer and chief financial officer of COB, Heffernan "was in a position" to have

9

prevented the harm which befell it. *Complaint*, ¶¶ 10, 11, 23, 31, 48. Certainly, by 1998, ISG knew that Heffernan was a corporate officer of COB. *Fitzpatrick Aff.*, Ex. 3.[6] Even if ISG did not know that, his affiliation and corporate titles with COB were not inherently unknowable. *See Krasnow v. Allen*, 29 Mass. App. Ct. at 569-70 (doctor's status as an employee of Commonwealth not inherently unknowable and therefore discovery rule did not delay accrual of claims against the Commonwealth). Moreover, it is anomalous to allege, as ISG does, that it is a victim of fraud and misrepresentation by Heffernan while at the same time suggesting that it did not know that he was involved in the events about which they now complain.

### C. Heffernan's Alleged Status As ISG's Fiduciary Will Not Save Its Time Barred Claims.

ISG may argue that Heffernan was its fiduciary and that his alleged failures of disclosure constituted a fraudulent concealment under M.G.L.c. 260, § 12. In the first instance, as discussed in Section III, *infra*, at 12-14, ISG has not alleged facts sufficient to establish that Heffernan was its fiduciary. Secondly, ISG is required by Fed. R. Civ. P. 9(b) to plead facts supporting its claim of fraudulent concealment with particularity. *J. Geils Band Employee Ben. Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1255 (1st Cir.) *cert. denied*, 519 U.S. 823 (1996). As discussed in Section II, *infra*, at 11-12, ISG's allegations do not meet the particularity requirements of the rule.

Most importantly, even assuming *arguendo* that Heffernan was ISG's fiduciary and engaged in fraudulent concealment, the statute of limitations began to run more than three years ago. Even in the case of a fiduciary defendant and a failure of disclosure amounting to

---

[6] Exhibit 3 to the Fitzpatrick Affidavit is a memorandum dated November 12, 1998 from Heffernan to ISG. It identifies him as a Vice President of Finance for COB. As this document is the basis of the allegations contained in paragraph 33 of the Complaint and the Court may consider it without converting the motion to dismiss to a motion for summary judgment. *See* Footnote 4, *supra*.

fraudulent concealment under M.G.L.c. 260, § 12, the "statue of limitations...is not tolled if the plaintiff has actual knowledge of the facts giving rise to his cause of action." *Micromuse, Inc. v. Micromuse*, PLC, 304 F. Supp. at 214, *quoting Stark v. Advanced Magnetic, Inc.* 50 Mass. App. Ct. 226, 233-34 (2000). Once ISG had actual knowledge that COB's non-depletion commitment had been broken and that its $4,000,000 had been diverted such that criminal investigations and recovery efforts had commenced, the statute of limitations had begun to run. *Micromuse, Inc. v. Micromuse, PLC*, 304 F. Supp at 215. ISG had that actual knowledge in 1999, or at the latest, February of 2001. Thus, even if Heffernan owed a fiduciary duty to ISG, its claims against him were already time barred on April 30, 2004, when this suit was filed.

## II. ISG'S FRAUD CLAIMS (COUNTS VII – XII) ARE NOT ALLEGED WITH PARTICULARITY AS REQUIRED BY FED. R. CIV. P. 9(b) AND SHOULD BE DISMISSED.

Assuming *arguendo* that the Court does not rule that ISG's entire case is barred by the statute of limitations, Counts VII through XII should be dismissed in light of ISG's failure to allege fraud with particularity. *See* Fed. R. Civ. P. 9(b). Rule 9(b) "entails specifying in the pleader's complaint the time, place and content of the alleged false or fraudulent representations." *Aruda v. Sears, Roebuck & Co.*, 310 F.3d 13, 19 (1st Cir. 2002), *quoting Powers v. Boston Cooper Corp.*, 926 F.2d 109, 111 (1st Cir. 1991); *accord United States ex rel. Karvelas v. Melrose-Wakefield Hospital*, 360 F.3d 220, 226 (1st Cir. 2004).

With the exception of the allegations contained in paragraph 33 of the Complaint, which are addressed below, ISG does not allege that Heffernan made any representations, true or false, to it. Certainly, ISG does not specify the "time, place and content" of any false or fraudulent representation by Heffernan.

11

Paragraph 33 of the Complaint alleges as follows:

> ISG asked COB for assurance that its funds had not be depleted, and for a commitment as to when ISG would be paid. Heffernan promised ISG that he would respond expeditiously to ISG's inquiry, but he failed to do so. Heffernan's failure to provide the information resulted in ISG remaining unaware of the true state of affairs.

These allegations refer to an exchange of correspondence on November 11, 1998 and November 12, 1998. *See Fitzpatrick Aff.*, ¶¶ 3 and 4 and Exs. 2 and 3.[7] On November 11, 1998, ISG sent COB a letter. *Id.*, Ex. B. It contains no request for an assurance that its funds had not been depleted and no request for a commitment as to when ISG would be paid. *Id.* The inconsistencies between ISG's inaccurate allegations and the text of its November 11, 1998 letter "must be resolved in favor of the latter." *Aruda v. Sears, Roebuck & Co.*, 310 F.3d at 18. Moreover, there is no misrepresentation alleged by Heffernan, only a failure to provide requested information. Thus, paragraph 33 of ISG's Complaint adds nothing to ISG's inadequately pled misrepresentation claims.

By any measure, ISG has not alleged fraud with the required particularity. Its "lack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). As such, Counts VII through XII of the Complaint should be dismissed.

### III. NONE OF ISG'S FIDUCIARY DUTY CLAIMS (COUNTS I-III) STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Both as a basis for a breach of fiduciary duty claim against Heffernan (Count I) and in a futile attempt to ward of a statute of limitations defense, ISG alleges that "Heffernan owed a fiduciary duty to ISG." *Complaint*, ¶ 16. No formal fiduciary duty is asserted. ISG seeks to impose a fiduciary duty upon Heffernan by alleging that he had "superior knowledge, skill and

---

[7] The Court may consider these documents on Heffernan's motion to dismiss. *See* Footnote 4, *supra.*

expertise" and that it "relied on COB, Pomeroy and Heffernan to act as fiduciaries on ISG's behalf." *Id.*, ¶¶ 16 and 17.

Heffernan acknowledges that "Massachusetts Courts have stated that, though business transactions conducted at arm's length generally do not give rise to fiduciary relationships, such a relationship can develop where one party reposes its confidence in another." *Industrial General Corp. v. Sequoia Pacific Systems Corp.*, 44 F.3d 40, 44 (1st Cir. 1995). A plaintiff such as ISG, however, cannot unilaterally impose a fiduciary duty upon a defendant. "[P]laintiff alone, by reposing trust and confidence in the defendant, cannot transform a business relationship into one which is fiduciary in nature." *Salois v. Dime Savings Bank of New York*, 1996 WL 33370626 * 9 (D. Mass. 1996), *aff'd*, 128 F.3d 20 (1st Cir. 1997), quoting *Broomfield v. Kosow*, 349 Mass. 749, 755 (1965); *accord Industrial General Corp. v. Sequoia Pacific Systems Corp.*, 44 F.3d at 44; *Compagnie de Reassurance d'Ile de France v. New England Reinsurance Corp.*, 944 F. Supp. 986, 995 (D. Mass. 1996); *Davidson v. General Motors Corp.*, 57 Mass. App. Ct. 637, 643 (2003); *see also In re Fordham*, 130 B.R. 632, 649 (Bankr. D. Mass. 1991) (party "may not abandon all caution and responsibility for their own protection and unilaterally impose a fiduciary relationship"). As the seminal case on this issue, *Broomfield v. Kosow*, explains, the "catalyst in such a change is the defendant's knowledge of the plaintiff's reliance upon him." 349 Mass. at 755; *accord Industrial General Corp. v. Sequoia Pacific Systems Corp.*, 44 F.3d at 44 (quoting and following *Broomfield*); *Compagnie de Reassurance d'Ile de France v. New England Reinsurance Corp.*, 944 F. Supp at 945 (same); *Davidson v. General Motors Corp.*, 57 Mass. App. Ct. at 643 (citing and following *Broomfield*).

When measured against those legal requirements, it is clear that ISG's Complaint falls far short of alleging a fiduciary relationship between itself and Heffernan. It does not allege either

13

directly or by inference that Heffernan knew that ISG was relying upon him to act as its fiduciary. As such, ISG has failed to allege a fiduciary relationship with Heffernan or a claim for breach of fiduciary duty upon which relief can be granted. *See, e.g., Industrial General Corp. v. Sequoia Pacific Systems Corp.*, 44 F.3d. at 44-45 (absence of defendant's knowledge of plaintiff's reliance required ruling of no fiduciary relationship and reversal of judgment for plaintiff). Accordingly, Count I of ISG's Complaint for breach of fiduciary duty should be dismissed.

It is also true that ISG has not alleged knowledge of reliance by COB or Pomeroy the two other parties it claims had a fiduciary relationship with, and fiduciary duty to, it. Therefore, ISG's claims against Heffernan for conspiracy to breach fiduciary duty (Count II) and aiding and abetting breach of fiduciary duty (Count III) also fail to state claims upon which relief can be granted and should be dismissed.

## CONCLUSION

For the foregoing reasons, Heffernan respectfully requests that ISG's Complaint be dismissed in its entirety. Alternatively, Heffernan requests that Counts I-III and VII–XII of its Complaint be dismissed.

## REQUEST FOR ORAL ARGUMENT

Defendant hereby respectfully requests oral argument on his Motion To Dismiss The Complaint.

          Defendant,

          **STEPHEN C. HEFFERNAN**

          By his attorneys,

          Thomas S. Fitzpatrick/BBO #556453
          DAVIS, MALM & D'AGOSTINE, P.C.
          One Boston Place, 37th Floor
          Boston, MA 02108
          (617) 367-2500

Dated: May 19, 2004

I HEREBY CERTIFY THAT A COPY OF THE ABOVE DOCUMENT WAS SERVED UPON THE ATTORNEY OF RECORD FOR EACH PARTY BY MAIL/HAND ON 5-19-04