Effective March 12, 2001 Pappalardo joined the law firm of Greenberg Traurig, where Stephen Burr, the lawyer who had sent the August 12, 1999 demand letter to Swan Trust and May Davis, was employed. Pappalardo continued his communications with ISG and on May 29, 2001 emailed ISG about a meeting he had had with Henry Pearlberg who promised to make full restitution within 7-10 days. Also, Pappalardo told ISG that Pearlberg had provided his "entire file on the Swan Trust dealings with C. Joan Patrick, including original documents such as monetary transfers and contracts with May Davis and Joan Patrick which are valuable for litigation." (Ex. 61).

On August 15, 2001, a pivotal exchange occurred which further induced ISG's reasonable reliance on Pappalardo. ISG wrote directly to Pappalardo to complain about his lack of responsiveness and to press for a meeting with Pearlberg in September. ISG was clearly frustrated with Pappalardo, but said, tellingly, "we don't wish to harm the relationship with you." (ISG 62). In response, Peter Ness, vice president and in-house counsel, and COB's liaison with Pappalardo, faxed back a note saying "we are proceeding with first steps of litigation." (Ex. 63). A week later Pappalardo himself emailed ISG saying that Pearlberg would meet with ISG in September. (Ex. 64). Other emails from Pappalardo followed on September 28, 2001 and October 2, 2001.

### M.    *Incorporation of SB Global, Inc.*

At the same time that ISG was writing to Pappalardo with frustration about his lack of responsiveness, Pappalardo's law firm was incorporating a new entity, SB Global, Inc. St. Frederikslund funded the new entity with $1.8 million, and put $100 million into a bank certificate of deposit to be used for further investment in SB Global. The $100

14

million possibly was held in an attorneys trust account. Later, in the case of St. Frederikslund v. SB Global, Inc., Civil Action No. 01-11968-RWZ, Heffernan gave an affidavit stating that St. Frederikslund (under that name and the earlier name of Danstrupland) transferred a total of $19 million to COB, including the $10 million investment it made in May 1998, approximately the same time that ISG made its investment. Most of the supplemental $9 million was transferred to COB and was accounted for by way of an "L&E" account (meaning loan and exchange). From COB's L&E account, St. Frederikslund's money, funneled through SB Global, was paid to certain of COB's creditors, such as Greenberg Traurig and Eckert Seamans Cherin & Mellott.

Throughout all this time, Heffernan was treasurer of SB Global, and was aware of and involved with the funding of SB Global, including the L&E account. Heffernan also functioned as an integral part of the new entity's management. Neither anyone from COB nor Pappalardo, told ISG about the new venture. This was significant because ISG was a large creditor of COB and was pressing for results at the very time that St. Frederikslund's money was siphoned through the L&E account to selected other creditors, including the lawyers.

### N.    *ISG hires its own counsel*

From 1999 until October 2001, ISG was induced to rely on Pappalardo, and did reasonably rely on him. ISG believed that he was acting on its behalf, to protect its interests, and relied on him to do what was necessary to recover the funds, according to his professional judgment. Finally, in October 2001, ISG realized that Pappalardo was

15

not going to be able to recover ISG's funds on a consensual basis and that he had not and probably was not going to commence litigation.

In late October or early November 2001, ISG sought its own counsel. ISG's counsel contacted Pappalardo to ask for a meeting in order to understand his recovery efforts and obtain the documents he had collected while he was representing the "team," including ISG. On December 7, 2001, Pappalardo, purporting to be cooperative, agreed to meet but postponed establishing a date certain. In early 2002, prior to filing the complaint in Civil Action No. 02-10532-RWZ, ISG's counsel continued to press for the documents that Pappalardo had collected from Henry Pearlberg and First Merchant Bank so that it could assess whether it had claims against Swan Trust and the other transferees. No documents were produced, but Pappalardo replied by email that he was preparing a package of documents and he expected defendants' new counsel, Gary Crossen, to give clearance for their production. No documents were produced. Thereafter, counsel made phone calls and wrote to both Pappalardo and Crossen, on January 25 and 31, 2002, to try to obtain the documents. The letters were not answered. Counsel wrote again to Crossen on March 8 and March 14, 2002. The letters were not answered.

### P.    *ISG attempts to obtain documents in discovery*

ISG commenced its own litigation against COB and Pomeroy on March 22, 2002, International Strategies Group, Ltd. v. Corporation of the BankHouse, Inc., et al, Civil Action No. 02-10532-RWZ. Judgment in ISG's favor entered April 26, 2004. During discovery in that case, ISG subpoenaed documents from numerous parties, including from Heffernan. Heffernan initially resisted, but after ISG filed a motion to compel

16

(docket # 34 in 02-10532-RWZ), Heffernan relented and produced documents.[6] Those and other documents made clear that Heffernan was not a mere functionary, but was an integral part of COB's senior management, with authority for its financial management and accounting practices.

## II. *Facts pertaining to Heffernan's breach of fiduciary duty and fraud*

The facts recited above regarding the tolling of the statute of limitations also support the point that ISG has stated a claim against Heffernan for breach of fiduciary duty and fraud. In summary, the facts are that Heffernan was treasurer and chief financial officer of COB, and a senior executive in other Pomeroy-controlled entities. He received bank account information, was signatory to a number of COB bank accounts, prepared financial statements and worked with the outside auditors to prepare tax returns. He was an integral part of Pomeroy's management team, a member of the "inner circle" of Pomeroy-controlled entities, according to Barbara Kravitz, COB's corporate secretary. Heffernan knew ISG was relying on COB to safeguard its $4 million, and return both principal and profits. Heffernan knew COB had promised ISG's investment would not be depleted.

Heffernan also knew that ISG's account was depleted, and that funds allocated to ISG and other investors had been transferred to Swan Trust, and then to other third parties. He knew the corporation was insolvent, and had no way to repay ISG except by taking in more money from another victim, or getting it back from the transferees.

---

[6] Heffernan finally told ISG about the replacement when he was subpoenaed for deposition testimony in on December 22, 2003. At the same disposition, Heffernan finally told ISG about the "L & E" accounts used to transfer investors' money to COB personnel, COB creditors and other COB entities.

17

Heffernan also knew, because he volunteered to fill this role, that ISG was relying on him to assemble and send information about the location and safekeeping of its funds.

On these facts, the jury could reasonably conclude that Heffernan owed a fiduciary duty to ISG, and breached that duty as well as committed fraud.

## ARGUMENT

### I. *The standard applied to a motion to dismiss*

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the [non-moving party] can prove no set of facts in support of its claims that would entitle it to relief." Eggert v. Merrimac Paper Co., 311 F. Supp. 2d 245 (2004). It is incumbent upon the court to "accept the complaint's allegations as true, including all reasonable inferences in favor of [the non-moving party]." Id.

### II. *ISG's claims are not barred by the statute of limitations*

Heffernan argues that the claims are governed by a three year statute of limitations. He also argues that the statute began to run either (i) in 1999 when ISG knew that COB had transferred its investment to Swan Trust, or (ii) in 2000 when ISG granted a power of attorney to Pappalardo to assist in recovering the funds, or (iii) in February 2001 when Pappalardo wrote to ISG about the "monies which were invested by ISG with Swan Trust and later misappropriated and diverted by Mr. Henry Pearlberg to John (*sic*) Patrick." (Pappalardo letter to Clark dated Feb. 22, 2001, Ex. E to Fitzpatrick Affidavit submitted in support of Motion to Dismiss.) At none of these points, however, did ISG know that COB or its senior executives, including Heffernan, had defrauded or conspired to defraud ISG, or aided in the fraud.

18

A limitations period may be tolled until a plaintiff learns or should have learned that he has been injured under three circumstances: (i) where a misrepresentation concerns a fact that was "inherently unknowable" to the injured party; (ii) where a wrongdoer breached some duty of disclosure; or (iii) where a wrongdoer concealed the existence of a cause of action through some affirmative act done with the intent to deceive. Patsos v. First Albany Corporation, 433 Mass. 323, 741 N.E. 2d 841 (2001). Also, M.G.L. c. 260, § 12 provides tolling protection in the event a person fraudulently conceals the cause of action from the knowledge of the person entitled to bring it, in which case the period prior to the discovery of the cause of action shall be excluded in determining the time limit for the commencement of the action.

The triggering event to start the running of the statute of limitations cannot be pinpointed as matter of law. Stolzoff v. Waste Systems International, Inc. 58 Mass. App. Ct. 747, 792 N.E. 2d 1031 (2003) *citing* Szymanski v. Boston Mut. Life Ins. Co., 56 Mass. App. Ct. 367, 370, 778 N.E. 2d 16 (2002). Factual disputes concerning when a plaintiff knew or should have known of his cause of action are to be resolved by the jury. Patsos v. First Albany Corporation, *supra*, *citing* Riley v. Presnell, 409 Mass. 239, 247, 565 N.E. 2d 780 (1991). In this case, a jury could reasonably find that COB, Pomeroy and Heffernan, among others, breached the duty of disclosure they owed to ISG and also concealed the existence of causes of action against them through affirmative acts, undertaken with the intent to deceive.

Heffernan's failure to tell ISG the true state of affairs, time and time again, prevented the statute of limitations clock from running. Heffernan had a duty of disclosure, but he allowed numerous misrepresentations to stand uncorrected, and in his

19

role as chief financial officer helped COB and Pomeroy defraud ISG. The statute was also tolled by Heffernan's and Pappalardo's action undertaken to prevent ISG from making its own investigation and discovering the fraud perpetrated.

### A.   *Heffernan's breach of fiduciary duties tolled the statute of limitations*

Where a fiduciary relationship exists, the failure adequately to disclose the facts which would give rise to knowledge of a cause of action constitute fraudulent concealment for purposes of the tolling statute, M.G.L. c. 260, § 12. Quinton v. Gavin, 2001 Mass. Super. Lexis 402 (2001), *citing* Demoulas v. Demoulas Super Markets, Inc. 424 Mass. 501, 517, 519, 677 N.E. 2d 159 (1997). A plaintiff is not required to have made an independent investigation of the facts, since one who occupies a position of trust and confidence toward another has an ongoing duty of full disclosure. Wilson Farm, Inc. v. Berkshire Life Insurance Co., 15 Mass. L. Rep. 423, 2002 Mass. Super. Lexis 376 (2002), *citing* Demoulas, 424 Mass. at 519; Bakis v. National Bank of Greece, 1998 Mass. Super. Lexis 731 (1998), *citing* Puritan Medical Center, Inc. v. Cashman, 413 Mass. 167 (1992).

If the defendant is a fiduciary, even the fact that plaintiff had the means to discover the existence of a claim does not preclude the tolling of the statute of limitations until such time as plaintiff acquires actual knowledge of the claim. The "discovery rule" which requires plaintiff to exercise reasonable diligence to discover a cause of action does not apply when the defendant is a fiduciary. Thus, the court's first task is to determine whether or not a reasonable jury could conclude that defendant was a fiduciary. Wilson Farms v. Berkshire Life Insurance Co., *supra*.

20

Pappalardo admitted that his clients owed a fiduciary duty to ISG and the other investors. While Pappalardo may not have been representing Heffernan individually, he certainly was speaking for the corporation of which Heffernan was treasurer and chief financial officer. As a senior executive of COB, Heffernan fell within the group that owed a duty to ISG, and that was charged with insuring that the corporation honored its duty. Heffernan is liable for his own and for the corporation's breaches of that duty. A corporate officer is personally liable for a tort committed by the corporation that employs him, if he personally participated in the tort by, for example, directing, controlling, approving, or ratifying the act that injured the aggrieved party. Townsend, Inc. v. Beaupre, 47 Mass. App. Ct. 747, 716 N.E. 2d 160 (1999). *See also* Polo Fashions, Inc. v. Branded Apparel Merchandising, Inc., 592 F. Supp. 648 (1984). Persons who control a corporation may be held liable along with the corporation for torts committed by them in connection with corporate business. Instant Image Print Shop, Inc. v. Lavigne, 1998 Mass. App. Div. 74, 1998 Mass. App. Div. Lexis 32 (1998).

Even if Pappalardo had not admitted that a fiduciary duty was owed, the facts surrounding the relationship between COB and ISG would have led to the same conclusion. The relationship was not a simple broker-customer relationship, or a mere engagement to buy in behalf of another without more. *See* Patsos v. First Albany Corporation, *supra, citing* Lefkowitz v. Smith Barney, Harris Upham & Co., Inc. 804 F.2d 154, 155 (1st Cir. 1986) and Berenson v. Nirenstein, 326 Mass. 285, 289 (1950). Instead, it was a relationship of trust and confidence akin to that discussed in Birch v. Arnold & Sears, Inc., 288 Mass. 125, 129 (1934), a case cited in Patsos v. First Albany Corporation, *supra,* in which it was held that a fiduciary relationship came into existence

where a broker approached an investor, offered to serve as his agent and represented that he was in a unique position to negotiate the purchase. Where the broker enjoys a broad degree of discretion in selecting and executing transactions without necessarily obtaining prior approval, the broker assumes broad fiduciary obligations that extend beyond individual transactions. Patsos v. First Albany Corporation, *supra,* and cases cited therein. *See also* Clough v. Brown, 59 Mass. App. Ct. 405, 796 N.E. 2d 415 (2003) (special circumstances may give rise to a fiduciary relationship); Bakis v. National Bank of Greece, *supra* (fiduciary relationship existed where bank targeted a customer and actively and repeatedly promoted an investment about which the bank had unique knowledge).

Even if Heffernan argues that only COB had a fiduciary duty, and not he individually, the case law will put a stop to that argument. Both the brokerage firm and the individual financial advisor have fiduciary duties to clients. American Express Financial Advisors v. Walker, 9 Mass. L. Rep. 242, 1998 Mass. Super. Lexis 577 (1998). *See also* Townsend, Inc. v. Beaupre, *supra*; Instant Image Print Shop, Inc. v. Lavigne, *supra.*

Here, COB enjoyed broad discretion to enter into transactions, using ISG's money, without getting ISG's prior approval. Heffernan himself knew that COB's action had depleted ISG's funds but he nonetheless talked to Clark about wiring $1 million in profit to ISG.. Heffernan helped arranged for the "replacement" of the depleted funds and transferred $19 million, including $4 million allocated to ISG, to Swan Trust, all without ISG's knowledge or consent. Heffernan even specifically volunteered to provide confirmation of the Fleet account after ISG wrote to COB asking for information, and

22

was therefore aware that ISG was relying on him to provide the information. From this, a jury could reasonably find that a fiduciary duty arose on Heffernan's part.

Based on the fiduciary relationship that existed, the statute of limitations is tolled for claims arising from the undisclosed, concealed and misrepresented facts. Nanfelt v. Asher, 16 Mass. L. Rep. 493, 2003 Mass. Super. Lexis 215 (2003), *citing* Demoulas v. Demoulas Super Mkts., Inc., *supra*.

### B.  *Acts of affirmative concealment tolled the statute of limitations*

In addition to not disclosing facts which he was bound by his fiduciary duty to disclose, Heffernan took affirmative acts to conceal the causes of action that ISG had. *See* Patsos v. First Albany Corporation, *supra*; Stolzoff v. Waste Systems International, Inc., 58 Mass. App. Ct. 747, 792 N.E. 2d 1031 (2003).

ISG did not know, and because of Heffernan's, COB's and Pappalardo's affirmative acts, was unable to find out, that COB, Pomeroy and other senior executives had engaged in fraud, misrepresentations and breaches of fiduciary duty. While ISG knew by 1999 that COB had transferred funds to Swan Trust, ISG did not know about all the rest of the dirty laundry.

The very letter on which Heffernan relies in moving to dismiss, the one to Clark dated February 22, 2001, was part of the pattern. When the letter was written, Pappalardo had been operating under ISG's power of attorney for seven months. He had accepted the power of attorney upon ISG's express condition, that he would exercise the utmost good faith and due care with regard to the interests of ISG, and communicate with ISG fully and on a timely basis.

23

It is worth reading the letter itself because it is so telling, but the following summary is offered. Pappalardo reported to ISG that recovery was likely to come from three sources: from accounts at First Merchant Bank, from Pearlberg, and from the recovery specialists. With regard to First Merchant Bank, Pappalardo reported that he had collected documents that completed the paper trail, and had also obtained First Merchant Bank's pledge of "full cooperation with the recovery effort." Henry Pearlberg of Swan Trust had expressed an intent to make "restitution" to BankHouse on behalf of its investors. Pappalardo opined that "it is reasonable to conclude that positive developments could result in the return of monies. If such is the case I have advised BankHouse that ISG should be paid forthwith consistent with its fiduciary duty it has (sic) to ISG as an investor in Swan Trust." Pappalardo added "[n]otwithstanding any recovery of principal or profit, BankHouse is reviewing its legal options through outside counsel by way of civil suit against both individuals and institutions." This is a prime example of Pappalardo's conduct which led ISG to believe that he was trying to recover the funds, and that he and COB would distribute the recovery in accordance with the fiduciary duty owed to ISG. The letter, along with other communications, also led ISG to believe that if the consensual recovery efforts were not successful, then Pappalardo would commence litigation, and distribute the recovery to ISG, consistent with the acknowledged fiduciary duty.

After the February 22, 2001 letter as well, Pappalardo continued to act in the same role on behalf of ISG, and ISG continued to rely on Pappalardo to protect its interests, either through a consensual recovery or through litigation. In August 2001, ISG was frustrated but did not want to harm the relationship with Pappalardo. In response, COB

24

told ISG that it was proceeding with the first steps of litigation, and Pappalardo emailed that Pearlberg was willing to meet. In September 2001 Pappalardo asked Clark to call him for an update. Finally, in October 2001, Pappalardo passed on a message from Pearlberg that the deal was "all set."

ISG did not know at any point in time, before retaining its own counsel, that COB had defrauded it because of the very different picture that Pappalardo and COB painted. They portrayed COB as a victim, and on the same "team" as the investors. It is entirely fair to charge Heffernan with the delay tactics of Pappalardo. Heffernan knew of Pappalardo's involvement and that all communications with investors were to go through the lawyers, and he acquiesced in this tactic.

### III. *ISG states a claim for breach of fiduciary duty and fraud*

#### A. *Claim for breach of fiduciary duty is stated*

ISG has already stated the reasons that Heffernan is a fiduciary to ISG, and cited the relevant case law above. The Complaint makes the same factual allegations, to wit:

- Heffernan's corporate title and job responsibilities ¶ 10,11
- Heffernan's role as one of the core group of senior executives, active in the management of Pomeroy-controlled entities ¶ 12, 13
- Heffernan's superior knowledge, skill and expertise ¶ 16
- COB's acceptance of ISG's investment funds ¶ 16
- ISG's reliance on COB, Pomeroy and Heffernan ¶ 17
- Heffernan's knowledge of fraudulent activities with respect to ISG's funds ¶ 19, 20, 23, 30. 31,

25

- Heffernan's failure to tell ISG the truth of what happened to its funds ¶ 27, 32

- Heffernan's promise to give ISG information, which he failed to provide ¶ 33

- Heffernan's receipt of a promissory note in his own favor ¶ 39

- Heffernan's knowledge that COB was insolvent or nearly insolvent ¶ 32

- Heffernan's participation in transferring funds from St. Frederikslund to SB Global, then to COB, and then to certain creditors of COB (including COB's lawyers), instead of paying ISG ¶ 40, 48

A fiduciary duty of honest advice and full disclosure arises when one party reposes confidence in the integrity of another and the other party in advising voluntarily assumes and accepts the confidence. Deere & Co. v. Ford, 2002 Mass. Super. Lexis 296 (2002), citing Karal v. Marken, 333 Mass. 743, 745, 133 N.E. 2d 476 (1956); Rood v. Newberg, 48 Mass. App. Ct. 185, 193, 718 N.E. 2d 886 (1999), *rev. den.* 431 Mass. 1106 (2000). If the trust and confidence is knowingly betrayed by the more experienced party for the purpose of his own benefit, fiduciary obligations may arise. Id., *citing* Geo. Knight & Co., Inc. v. Watson, Wyatt & Co., 170 F. 3d 210, 216 (1st Cir. 1999). Heffernan had both his own duty of disclosure arising from his knowledge of COB's financial dealings, and is responsible for seeing that the corporation carried out its duty as well. *See* Townsend, Inc. v. Beaupre, *supra*; Polo Fashions, Inc. v. Branded Apparel Merchandising, Inc., *supra*; Instant Image Print Shop, Inc. v. Lavigne, *supra*.

### B. *Claim for fraud is stated*

Fraud concerns a false representation of fact or intention for the purpose of inducing another to act or refrain from acting in reliance thereon. If a person volunteers information, he must speak honestly and must divulge all material facts of which he knows bearing upon the point. Golber v. BayBank Valley Trust Co., 46 Mass. App. Ct. 256, 258 (1999).

Where a fiduciary relationship exists, a defendant may be liable for silence, even concerning matters about which he is not asked. Kannavos v. Annino, 356 Mass. 42, 47, 247 N.E. 2d 708, 711 (1969); Nota Constr. Corp. v. Keyes Assocs., Inc., 45 Mass. App. Ct. 15, 19, 694 N.E. 2d 401, 405 (1998).

ISG's complaint states just such a claim of fraud against Heffernan. It alleges:

- Heffernan knew or was in a position to know of certain misrepresentations ¶ 20, 22, 23,

- Heffernan failed to tell ISG facts that were necessary to make other representations true and complete statements of fact, and induced ISG's reliance thereon, including failing to tell ISG that its funds had been transferred to others, that Swan Trust had transferred the funds to other third parties, that COB was insolvent or nearly insolvent, that funds were transferred to COB from SB Global in order to pay certain other creditors ¶ 27, 28, 32, 34, 44, 45, 46, 48

- Heffernan volunteered to provide information, and failed to do so, thereby inducing ISG's reliance on an mistaken belief in the facts ¶ 33

27

## IV. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss should be denied. ISG's claims are not barred by the statute of limitations. Also, ISG has stated claims of breach of fiduciary duty and fraud against Heffernan. If the Court disagrees, leave is requested to amend the Complaint by adding additional facts regarding the fraud and fiduciary duty claims.

PLAINTIFF INTERNATIONAL
STRATEGIES GROUP, LTD.
by its attorney,

*Kathleen C Stone*
Kathleen C. Stone, BBO# 481920
Looney, Cohen, Reagan & Aisenberg, LLP
109 State Street
Boston, MA 02109
617-371-1050

June 9, 2004

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY THAT ON THIS DAY A TRUE COPY OF THE ABOVE DOCUMENT WAS SERVED UPON THE ATTORNEY OF RECORD FOR EACH PARTY BY MAIL/BY HAND/BY FAX.

DATED: 6-9-04  *Kathleen C Stone*

28